**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ANTONYA O. HERRING,

      Plaintiff,

v.                                     Case No. 3:14-cv-738-JAG

CENTRAL STATE HOSPITAL,
COMMONWEALTH OF VIRGINIA, et al.

      Defendants.

## OPINION

Antonya O. Herring, an African American woman, worked as a nurse at Central State Hospital ("CSH"), a psychiatric hospital owned and operated by the Commonwealth of Virginia. In October 2012, a patient attacked Herring while she was on duty. She believes CSH and her supervisors put her in that situation as a result of race-based staffing decisions. She filed this law suit and named as defendants CSH and three of its employees in their official and individual capacities: Vicki Montgomery, the Director of CSH; Dr. S. Yarathra, Chief Psychiatrist of CSH's Forensic Unit; and Bernadette Spruill, the Head Supervisor in the Forensic Unit.

The complaint lists three counts and seeks both money damages and an injunction to stop racial staffing decisions. Count I alleges a denial of Herring's right to equal protection. Count II alleges race discrimination.[1]  Count III says the defendants violated Herring's right to have security present during the meeting with the violent patient and her right to immediately leave work to obtain medical attention.

---

[1] Counts I and II both deal with racial discrimination, and the plaintiff does not say how Count II differs from her Equal Protection claim in Count I. Count II contains only the sentence "Herring restates and realleges the previous paragraphs set forth above and incorporates them by reference herein." Compl. ¶ 72. The Court finds Count II duplicates Count I and so dismisses Count II.

The defendants have filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They assert Eleventh Amendment immunity from the claims against CSH and the official-capacity defendants. The individual defendants also claim qualified immunity from suit. Finally, they contend that Herring's complaint fails to state a claim.

The Court finds that Eleventh Amendment immunity shields CSH and the employees in their official capacity against all claims, except for claims for injunctive relief against Montgomery under Count I. Likewise, qualified immunity protects the individual defendants from suit under Count III, which alleges substantive due process violations; it does not, however, protect them under Count I, which alleges racial discrimination. As to the sufficiency of the complaint, the Court finds that Herring fails to state a claim for relief for racial discrimination against Yarathra and Spruill under Count I. Only Count I as alleged against Montgomery in her official and individual capacities survives the motion to dismiss.

## I. FACTS[2]

The complaint alleges the following facts:

Herring worked as a nurse in CSH's maximum security unit, Unit 8. Director of Nursing Eva Parham, with the direction and approval of CSH Director Vicki Montgomery, regularly assigned African Americans to this dangerous post.[3] While Herring worked at CSH, the entire staff of Unit 8 consisted of African Americans except for one white male. Opportunities to

---

[2] A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim or judging the applicability of any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 960 F.2d 943, 952 (4th Cir. 1992). A 12(b)(6) motion considers whether the non-moving party's description of the facts, if assumed to be completely true, would entitle her to the requested relief. *Unus v. Kane*, 565 F.3d 103, 115 (4th Cir. 2009). To survive a 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[3] Although Herring refers to claims against Parham, *see* Pl.'s Opp'n at 3, she does not name Parham as a defendant in this action.

2

transfer from Unit 8 virtually did not exist, and CSH assigned white female nurses with less seniority to safer units.

On October 30, 2012, Dr. S. Yarathra, Chief Psychiatrist of CSH's Forensic Unit, led a team meeting to tell a psychiatric patient with a history of violent behavior that he could not leave the maximum security unit. Despite knowing that the patient might react violently, Yarathra did not arrange for additional security in the room or Unit 8. During the meeting, Herring sat next to the patient, with other African American staff close by. The non-African American staff sat "well away" from him. As predicted, the patient responded violently to Yarathra's news. The patient lashed out at Herring and punched her several times in the head. Security soon arrived and restrained him.

After the assault, Herring asked permission to leave work to seek medical attention, but her supervisor, Bernadette Spruill, refused to allow her to leave because no nurse was present to relieve Herring. Spruill required Herring to perform her normal duties for four hours while she experienced pain and spit up blood and hard particles.[4] After she was relieved from her duties, Herring went to the emergency room and was diagnosed with contusions on her head, face, and right shoulder.

## II. DISCUSSION

### 1. No Claim Under 42 U.S.C. § 1981

Herring brings claims under 42 U.S.C. §§ 1981 and 1983 against the defendants. Section 1983, however, "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Even though Congress amended § 1981(c) after the

---

[4] In the complaint, however, Herring notes that when a similar attack happened to a white nurse, Spruill ordered Herring to cover for the nurse, who then received medical attention.

Supreme Court's decision in *Jett*, the holding from *Jett* remains good law, and § 1981(c) does not create a new remedy for the rights that it protects. *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156, n.1 (4th Cir. 1995).[5] The Court will therefore dismiss Herring's claims under § 1981.

### 2. Eleventh Amendment Immunity

The Eleventh Amendment provides that states cannot generally be sued in federal court.[6] *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012). Eleventh Amendment immunity extends to state officials sued in their official capacity, because "a suit against [an] official's office . . . is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 401 U.S. 58, 71 (1989) (citations omitted).

A claim against a State or its agent may overcome the Eleventh Amendment bar in three ways. First, a State may waive its immunity. *Va. Office for Prot. & Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011). Second, Congress may abrogate a State's immunity through appropriate legislation. *Id.* Third, a plaintiff may seek prospective, injunctive relief against state officials for ongoing violations of federal law under the exception established by *Ex parte Young*, 209 U.S. 123 (1908). *Stewart*, 131 S.Ct. at 1639. Only the *Ex parte Young* exception can possibly apply in this case.

*Ex parte Young* applies when "a federal court commands a state official to do nothing more than refrain from violating federal law," but it "does not apply when the state is the real, substantial party in interest." *Id.* at 1638 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)) (internal quotation marks omitted). To fall under the exception, the

---

[5] Herring concedes that *Dennis* precludes a § 1981 claim, but she raises the argument "to reserve her right to challenge" that precedent. Pl.'s Opp'n at 3.

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

plaintiff must bring an action against the proper state official and characterize the sought relief as both prospective and injunctive. *See Pickering v. Va. State Police*, 59 F. Supp. 3d 742, 747 (E.D. Va. 2014) (citing *Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Lee-Thomas*, 666 F.3d at 249 (4th Cir. 2012)).

### a. Central State Hospital

The Eleventh Amendment protects CSH, a state-owned hospital, from suit. "State agents and state instrumentalities" that act as an arm of the state share the same Eleventh Amendment immunity as the State. *Doe*, 519 U.S. at 429–30. State hospitals are state agencies protected under the Eleventh Amendment. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 247 (1985) (stating the Eleventh Amendment barred an action against a state hospital); *Herer v. Burns*, 577 F. Supp. 762, 764 (W.D. Va. 1984) (granting Eleventh Amendment immunity to a mental hospital owned by Virginia). The *Ex parte Young* exception does not apply to state agencies; it only applies to state officials. *See, e.g.*, *Lee-Thomas*, 666 F.3d at 249. Because the Eleventh Amendment shields CSH from suit, the Court dismisses all claims against CSH.

### b. Official Capacity Claims

Herring contends that the *Ex parte Young* exception applies to her claim for injunctive relief to stop the individual defendants from making race-based staffing decisions. Pl.'s Opp'n at 2–3.) The Court agrees, but only in regard to her injunctive claim against Montgomery, because the complaint fails to connect Yarathra and Spruill to race-based staffing decisions.

To fall within the *Ex parte Young* exception, a state official must have a "special relation" to the challenged action, measured by the official's "*proximity to* and *responsibility for* the challenged state action." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008); *see also McBurney v. Cucinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209

U.S. at 157) (requiring "a 'special relation' between the officer being sued and the challenged statute before invoking the exception"). Taking Herring's facts as true, the only defendant possibly related to the injunctive relief is Montgomery. Neither Yarathra nor Spruill had any part in Herring's assignment or the assignment of any nurses to Unit 8. Montgomery, by contrast, authorized race-based staffing decisions, so she has a "special relation" to the challenged action.

Herring also characterizes her sought relief against Montgomery as both prospective and injunctive. Any judgment of the Court would enjoin her future conduct to comply with federal law. *See Edelman*, 415 U.S. at 664.

Because the *Ex parte Young* exception applies to Montgomery, the Court will deny the motion to dismiss Herring's claims for injunctive relief to stop Montgomery from engaging in race discrimination. The Court grants the defendants' motion as to Yarathra and Spruill and dismisses the official-capacity claims against Yarathra and Spruill.

### 3. Qualified Immunity

Qualified immunity shields government officials who perform discretionary actions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis involves two inquiries: (1) whether the alleged facts show a constitutional right violation, and (2) whether the constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The Court has broad discretion in deciding which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The first prong of the qualified immunity test examines whether the defendant violated a constitutional right. A court must examine the alleged right in its application to the specific

conduct challenged rather than "at its most general or abstract level." *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995) (quoting *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992)). Although "fundamentally similar" precedent is not necessary, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), reference to similar cases increases the chance that a court will find a constitutional right violation. *See Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083–84 (2011) (finding an official immune when "not a single judicial opinion" held that similar conduct violated a constitutional right).

To be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson*, 483 U.S. at 639–40).

### a. Count I: Equal Protection/Race Discrimination

Count I asserts racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. This provision guarantees the right to be free from racial discrimination, which has been clearly established for decades. *See, e.g.*, *Brown v. Bd. of Educ.*, 347 U.S. 483, 495 (1954). No one in their right mind could possibly think that the government can discriminate based on race. Qualified immunity does not protect the defendants from Count I.

### b. Count III: Substantive Due Process

Herring brings Count III under the Fourteenth Amendment's Due Process Clause, alleging a violation of her rights to have security present in the meeting with the dangerous patient and to leave work to immediately obtain medical attention after the attack. Qualified immunity protects each of the individual defendants, however, because Herring fails to assert a cognizable constitutional right that was clearly established at the time of the events in this case.

*i. Substantive Due Process Principles*

Due process claims brought under § 1983 require more than state tort law claims. *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992); *Baker v. McCollan*, 443 U.S. 137, 146 (1979).  To find a state actor liable for a substantive due process violation, the actor must act (1) arbitrarily (2) with "deliberate indifference" to the plaintiff (3) to a level that "shocks the conscience." *See Collins*, 503 U.S. at 126 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)).  The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.* at 125.

In government employment settings, due process violations require especially egregious conduct because state tort law generally governs the substance of the employer relationship. *Id.* at 128.  Courts hesitate to expand government employees' constitutional rights because lawsuits could halt government functions and impose substantial costs. *See Engquist v. Or. Dep't of Argric.*, 553 U.S. 591, 600 ("[A]lthough government employees do not lose their constitutional rights when they accept their positions, those rights must be balanced against the realities of the employment context.").  The Due Process Clause does not replace employment law as "a guarantee against incorrect or ill-advised personnel decisions." *Id.* (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).

*ii. Right to Security in a Room with a Dangerous Patient*

Although courts have held that government officials can be held liable for violating individuals' right to security, no case establishes a right to security for employees around dangerous detainees.  As such, Herring has not asserted a clearly established right.

Individuals have a right to personal privacy and bodily security. *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980). But in the context of a substantive due process violation, the Court must examine if the state or state actor's action was so egregious "that it amount[s] to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.*; *see also Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986) ("[L]ack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent.").

Due process requires a state to provide a minimal level of safety for people deprived of liberty, but not for employees. *See Collins*, 503 U.S. at 127–28 (stating that the Due Process Clause requires "minimal custodial standards" but not minimum safety standards for employment). The Fourth Circuit has not held that due process entitles a state employee to security when around dangerous individuals, and Herring does not point to a single case to support such a right. In fact, her response to the defendants' motion to dismiss does not mention substantive due process at all.[7] Herring, therefore, fails to meet her burden of showing that government employees have a constitutional right to security, or that any such right was clearly established at any time.

---

[7] Moreover, other courts have found that state employees do not have a constitutional right to security. *See, e.g.*, *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 545 (6th Cir. 2008) (stating that a school did not deny a special education school teacher due process when a student injured her because she knew this possibility was a "normal occupational hazard"); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 493 (6th Cir. 2002) (holding that a prison was not liable for the death of a prison store employee because the prison did not have to provide extra security guards and did not act in a way that "shock[ed] the conscience"); *Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 275-78 (10th Cir. 1996) (granting qualified immunity to a prison when it failed to supply a prison guard to protect the plaintiff, a prison librarian, even though the prison library normally had a guard); *Uhlrig v. Harder*, 64 F.3d 567, 569-71, 574-76 (10th Cir. 1995) (stating that a mental hospital that recently closed its maximum security wing did not deny a plaintiff-employee substantive due process when a mentally ill patient killed the employee because the employee knew the patient was dangerous and the hospital did not intend to place the employee at risk).

Accordingly, qualified immunity protects each of the defendants in their individual capacities from the claims related to a right to security brought under Count III.

### iii. Right to Obtain Immediate Medical Attention

Government employees do not enjoy a constitutional right to immediate medical treatment when injured on the job. *See Witkowski v. Milwaukee Cnty.*, 480 F.3d 511, 512 (7th Cir. 2007) (stating that no circuit "has awarded damages under § 1983 to a public employee injured in the line of duty" in the past twenty years). "[T]here is no categorical constitutional right to adequate medical care." *Vallalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 687 (10th Cir. 2003).

Again, Herring fails to point to any case law that establishes a right for an employee to receive medical attention without delay, and the Court cannot find any case to support this assertion. Thus, Herring does not meet her burden of proof to show that a constitutional right to immediate medical attention exists for employees or that such a right was clearly established at the relevant time in this case.

Accordingly, qualified immunity protects each of the individual defendants in their individual capacities from the claims related to a right to immediate medical attention brought under Count III.

### B. Sufficiency of the Complaint

The defendants also challenge Herring's complaint under Rule 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss, the complaint must give "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S at 570. Because

10

the Court dismissed Count III based on qualified immunity, the Court examines only Count I under the 12(b)(6) standard.

### 1. Equal Protection and Racial Discrimination

First, the defendants assert that Herring fails to allege actions by the defendants to find them liable under the Equal Protection Clause. The defendants are correct that the complaint does not allege facts to find Yarathra and Spruill liable for an equal protection violation, but they are incorrect that Herring's complaint fails to state a claim against Montgomery.

Although the complaint alleges that Yarathra placed African American staff members next to the dangerous patient and non-African American staff "well away from [him]," Count I does not allege that Yarathra's seating arrangement directly caused her injuries. In fact, she does not mention Yarathra at all in Count I. Accordingly, the Court dismisses Yarathra in his individual capacity with respect to Count I.

The same is true for Spruill. Herring alleges that Spruill previously allowed a white woman to leave work early after a patient assaulted the woman and that Spruill forced Herring to replace her. Herring also states that Spruill did not allow her to leave and that Spruill could have taken over her duties or required a different nurse to take over. She does not, however, connect these alleged facts to her equal protection claim. Count I only asserts equal protection claims based upon her placement in Unit 8 and mentions nothing connected to Spruill. Accordingly, the Court dismisses Spruill in her individual capacity as to Count I of the complaint.

The defendants argue that Herring's allegations of racial discrimination are conclusory and do not contain facts to show direct action by Montgomery. Herring's complaint, however, alleges that the staff of Unit 8 contained almost all African Americans, that Herring could not transfer to other units, and that the hospital administration put white nurses with less seniority in

11

safer units.  Herring's complaint, therefore, sets forth "enough facts to state a claim to relief that is plausible on its face." *Id.*

Accordingly, the Court dismisses Count I as alleged against Yarathra and Spruill in their individual capacities, but the Court does not dismiss Montgomery in her individual capacity.

### III. CONCLUSION

In summary, the Court grants the motion to dismiss in part, and dismisses Counts II and III in their entirety, and Count I as against Spruill and Yaratha.  The Court denies the motion to dismiss with respect to Count I as against Montgomery in both her official and individual capacities.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: July 29 ,2014
Richmond, Virginia

/s/
John A. Gibney, Jr
United States District Judge