IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ANTONYA O. HERRING,
    Plaintiff,
v.                                                  Civil Case No. 3:14cv738

VICKI MONTGOMERY,
    Defendant.

## OPINION

Antonya Herring, an African-American woman, worked as a nurse at Central State Hospital ("CSH"), a psychiatric hospital owned and operated by the Commonwealth of Virginia. In October 2012, a patient attacked Herring while she was on duty. Herring believes the director of CSH, Vicki Montgomery, put her at risk of the assault by making race-based staffing decisions. At the motion to dismiss phase, the Court dismissed a number of claims and defendants, leaving only Count I, a race discrimination case against Montgomery in her official and individual capacities brought under 42 U.S.C. §§1981 and 1983.

The parties have filed cross-motions for summary judgment. The Court finds as a matter of law that the defendant is entitled to summary judgment for three reasons. First, the Eleventh Amendment precludes relief against Montgomery in her official capacity. Second, the evidence shows that Montgomery had no personal involvement in any employment decisions regarding Herring. Third, the evidence does not support the claim that anyone made staffing decisions motivated by race. The Court, therefore, grants Montgomery's motion for summary judgment and denies Herring's motion for summary judgment.

## I. BACKGROUND

Herring worked as a nurse in CSH's maximum security forensic unit, Ward 8. She began work at CSH on September 10, 2011. Before joining CSH, Herring had worked over fifteen years as a nurse, and had experience in psychiatric nursing. Just before coming to CSH, Herring had worked at Piedmont Geriatric Hospital, another state institution, for about two months. When Herring voluntarily transferred to CSH from PGH, the race code on her transfer form listed her as white. At some point after starting at CSH, someone corrected her race code to African American.

After Herring's orientation, Eva Parham, the Director of Nursing at the hospital, assigned her to Building 39 – Ward 8 – Day Shift effective October 7, 2011. Parham placed Herring in Ward 8 because she had requested day shift, which had an opening there, and because of Herring's prior psychiatric experience.[1] According to the complaint, CSH staffed Ward 8 with almost all African-American nurses, as compared to about 58% African-American nurses at CSH as a whole, during the time that Herring worked there.

CSH used a form called a Personal Action Request ("PAR") to initiate and document assignments within the hospital. CSH memorialized any transfer, including those requested by the employee, on a PAR. Although PARs technically required the signature of the hospital director, CSH customarily let department heads handle the assignments by themselves. For nurses, Parham handled transfer and placement decisions at CSH. The PAR that officially

---

[1] At oral argument, Herring's counsel argued that she had requested the evening shift, not the day shift. As counsel's argument does not constitute evidence, and the plaintiff has not provided any evidence that she requested anything other than the day shift, the Court will rely on the uncontroverted evidence produced by the defendant. In addition, the plaintiff's own briefing indicates that the plaintiff had requested the day shift. (*See* Pl's Reply to Def's Opp'n to Pl's Mot. for Summ. J. 6)

transferred Herring to Ward 8 after her orientation has only Eva Parham's signature. Parham never consulted with Montgomery about the decision to assign Herring to Ward 8.

Herring alleges that she had had some negative encounters with one of the other nurses on Ward 8, and sought to transfer at that point. Her supervisor, however, told her that there was no way she would be transferred off of Ward 8.[2]

On October 30, 2012, during a meeting with a volatile patient, the patient lashed out at Herring and punched her several times in the head. Security soon arrived and restrained him. Herring claims that after this incident she wanted to transfer off of Ward 8, but says that her supervisors again told her in no uncertain terms that she could not transfer. Because Herring believed a request to transfer would be futile, she never actually filled out a PAR requesting a transfer.

## II. DISCUSSION[3]

### A. Official Capacity Claim

A suit against an official in her official capacity is actually a suit against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In this case, therefore, CSH is the true party in

---

[2] Herring's supervisors deny that they told her she could not transfer off of Ward 8. (*See* Thompson Decl. ¶¶ 8, 13-14; Spruill Decl. ¶¶ 7-9). The Court notes that this is a disputed fact but ultimately the Court can decide the cross motions for summary judgment without resolving this dispute.

[3] The Federal Rules of Civil Procedure allows parties to move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). The familiar principles governing summary judgment allow the court to grant it if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted).

interest in the official capacity claim against Montgomery as Director of CSH. Absent a waiver, the Eleventh Amendment bars claims against a state or its agencies. *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015). For this reason, Herring cannot recover money damages against Montgomery in her official capacity.

*Ex parte Young*, 209 U.S. 123 (1908) provides a limited exception to the Elenenth Amendment bar on suits against states. *Young* allows a litigant to obtain injunctive relief against state officials in their official capacities. In order for Herring to have standing to get injunctive relief, she must face the possibility of future harm by the defendant. *City of Los Angeles v. Lyons*, 461 U.S. 95, 110 (1983). Herring, however, no longer works at CSH and does not face any possibility of future harm by the defendants. Consequently, the Court cannot grant injunctive relief in this case.

The Court grants summary judgment to the defendant on the official capacity claim.

### B. No Personal Involvement.

Respondeat superior is not an adequate theory of liability under § 1983;[4] rather, the plaintiff must show that the defendant is personally involved in the alleged wrong-doing. *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987). Herring has failed to bring forth any proof of personal involvement by Montgomery. Instead, the evidence shows Parham as the sole decision maker of nurse placement. While Montgomery was Parham's supervisor as Director of CSH, she had no direct involvement in Herring's initial placement or any requests for transfer that Herring may have made.

---

[4] In the context of this case, the same rule applies to claims under 42 U.S.C. § 1981, the alternative statute on which the plaintiff relies. Section 1983 supplies the sole avenue in a damages claim against a state actor based on the rights established in § 1981. *Crowley v. Prince George's County, Md.*, 890 F. 2d 683, 685 (4th Cir. 1989). The rules of liability under § 1983 therefore apply to claims against state actors to vindicate rights created under §1981.

4

Herring argues that Montgomery had personal involvement in the decision because the lateral transfer policy required her signature on the PAR. In this case, however, Montgomery did not sign the form transferring Herring to Ward 8, and the practice at CHS left these decisions to department heads.

Similarly, Montgomery never denied Herring a transfer off of Ward 8. Herring never actually filled out a PAR to transfer off of Ward 8, so this argument cannot tie Montgomery to those decisions.

The facts clearly demonstrate that Montgomery had no personal involvement in the decision to originally place Montgomery in Ward 8 or any decision that may have been made to keep her on Ward 8.

### C. No Discrimination

In any race claim, the plaintiff must prove discrimination to state an equal protection violation. In order to make out a prima facie case of discrimination, a plaintiff must either offer direct evidence of discriminatory intent or may raise the inference of discriminatory intent through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Herring does not contend that she has produced direct evidence that shows discriminatory intent, so the Court moves on to determine whether Herring has raised an inference of discriminatory intent.

The *McDonnell Douglas* framework allows a plaintiff to establish a prima facie case of race discrimination without direct evidence by showing that (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing her duties satisfactorily; and (4) similarly situated employees outside the protected

5

class received more favorable treatment. *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 307 (4th Cir. 2008).

Once the plaintiff has established a prima facie case of race discrimination, the defendant has the opportunity to show that the defendant made her decision for non-discriminatory, legitimate business purposes. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, (2000). If the defendant successfully makes this showing, then the presumption of discrimination falls away and the plaintiff has an opportunity to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*, at 143.

Even assuming that Herring has established a prima facie case, the evidence shows that CSH had legitimate non-pretextual reasons for the assignment. First, Parham placed Herring in Ward 8 because Herring had prior psychiatric nursing experience. Second, Ward 8 had an opening in the day shift which Herring said she preferred during salary negotiations.

Having lost the presumption of discrimination, Herring must show that the CSH's stated reasons are pretextual. Herring attempts to do this in two ways: (1) CSH had originally miscoded her as white and at some point corrected that codification, which Herring says explains her assignment to Ward 8; and (2) her supervisors on Ward 8 told her that she could not transfer from Ward 8. Herring's first claim fails because the facts show that no one knows exactly who changed Herring's race code, or when the change occurred. Thus, Herring has simply shown an error in coding, but has not shown that CSH's decision had anything to do with her race. Consequently, Herring has not shown that the first stated reason is pretextual.

Herring offers no evidence to show that the alleged effort to prevent her from transferring out of Ward 8 involved her race. As explained by the plaintiff, statements about

transfer are vague at best, more informal chatter than anything else. In any event, they are in no way attributable to Montgomery or CSH. Further, the alleged advice Herring received does not contain even a slight allusion to race.

In sum, Herring has not shown that CSH's stated reasons are pretextual. The Court finds that the plaintiff has not made a sufficient showing of discrimination to survive summary judgment.

### III. CONCLUSION

In summary, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment in its entirety.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: August 2, 2016
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge